■ Cornelius Carboy, Jr., et al., Respondents, v Cauldwell-Wingate Company, Inc., Appellant, et al., Defendants. (And Other Actions.) Cauldwell-Wingate Company, Inc., Third Third-Party Plaintiff-Appellant, v Consolidated Electric Construction Co. et al., Third Third-Party Defendants-Respondents. [841 NYS2d 20]—

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered February 27, 2006, which, to the extent appealed from, granted the motion of third third-party defendant Consolidated Electric Construction Co. to dismiss the claim of third third-party Cauldwell-Wingate Company, Inc. for indemnification and contribution, reversed, on the law, without costs, the motion denied and the matter remanded for further proceedings.

Appeal from order, same court and Justice, entered August 31, 2006, which denied Cauldwell-Wingate's renewal motion, dismissed, without costs, as academic in light of the foregoing.

On February 6, 2001, plaintiff, Cornelius Carboy, Jr., who was employed by Skyline Sheet Metal as a draftsman and was assigned to work at the soon-to-be-opened fitness center in the World Financial Center, was injured when he walked through the double glass doors that served as the entrance of the fitness center, took two steps and fell into what he described as "one big area and it was one big hole." It is undisputed that Consolidated, the electrical subcontractor, was installing recessed lighting in the floor of the fitness center, which necessitated digging shallow, 12-inch-wide trenches in the floor. Section 7 of Consolidated's contract with Cauldwell, the construction manager, contained an indemnification clause that required Consolidated to indemnify Cauldwell for any injuries "arising directly or indirectly" out of Consolidated's work.

In granting Consolidated summary judgment dismissing Cauldwell's third-party claim for contractual indemnification, the motion court found that Cauldwell merely assumed that plaintiff fell in one of the trenches dug by Consolidated and failed to controvert extensive evidence that plaintiff fell in a large hole separate from Consolidated's trench. However, viewing the evidence in a light most favorable to Cauldwell, the record raises questions of fact as to whether the trench dug by Consolidated was actually the hole into which plaintiff fell.

Although Cauldwell's records do include a notation that the ceramic and stone contractor chopped marble in the lobby, its project manager Chris Norris, who supervised construction at

the site, maintained this referred to "marble on the wall in the reception area." The evidence supports a reasonable inference that the only reason the floor was being "chopped" in the lobby was in support of Consolidated's electrical work and, although Norris was unclear on the subject, it is undisputed that it was Consolidated's responsibility to cover any holes or trenches it had dug. Moreover, given plaintiff's testimony that there was an electrician working in the area at the time he fell, that the hole or trench was 20 feet wide, and that there were no other trenches or holes in the area, a reasonable inference is that Consolidated, the only electrical subcontractor on the site, created the condition that resulted in the accident (*see Schneider v Kings Highway Hosp. Ctr.*, 67 NY2d 743, 744-745 [1986]). As for Consolidated's contention that the trench it created was in a different location than the one into which plaintiff fell, there is no clear agreement as to the placement of the trench or hole with respect to the glass doors. What is undisputed is that plaintiff saw an electrician working in the area and that he saw only one hole that was approximately 20 feet in length. This testimony comports with the testimony of Consolidated's foreman Robert Perracca that Consolidated dug a 20-to-25-foot curved trench, and any issues as to proximity are questions for the trier of fact.

In light of the foregoing, the question of whether Cauldwell's motion to renew was improperly denied has been rendered academic. Concur—Andrias, J.P., Nardelli and Sweeny, JJ.

Marlow and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: I disagree with the majority's conclusion that a triable issue of fact exists regarding whether the third third-party defendant Consolidated Electric Construction Co. (Consolidated) created the condition that allegedly caused the plaintiff Cornelius Carboy, Jr.'s accident. Accordingly, I dissent.

Plaintiff, an employee of a subcontractor, Skyline Sheet Metal, on a project building a fitness center, sustained personal injuries when he tripped and fell in a "hole" in an area where construction on the project was not yet complete. Plaintiff, and his wife derivatively, commenced this action against, among others, Cauldwell-Wingate Company, Inc. (Cauldwell), the construction manager on the project. Cauldwell impleaded Consolidated, an electrical subcontractor on the project, seeking indemnification or contribution. Cauldwell moved for summary judgment against Consolidated on its cause of action for contractual in-

demnification.[1] Consolidated, in turn, moved for summary judgment dismissing the third-party complaint as asserted against it. Supreme Court denied the motion of Cauldwell, granted the motion of Consolidated and dismissed the third-party complaint as against Consolidated.

The resolution of this appeal turns on whether a triable issue of fact exists regarding whether the "hole" into which plaintiff tripped and fell was created by Consolidated. Plaintiff testified at his deposition that the accident occurred when he was walking through the reception area of the fitness center, which was still under construction at the time. Specifically, plaintiff stated that he walked through a set of double doors into the reception area, took two steps, "stepped in a hole and . . . fell." Plaintiff also stated that the hole was "chopped out" of the floor and approximated that the hole was 20 feet wide and six to eight inches deep. Plaintiff stated that there was "one big hole" in the reception area and that it was that hole into which he fell. On this score, the following colloquy occurred between counsel for one of the other subcontractors and plaintiff:

"Q: How big is the room or the place around the hole where your accident happened?

"A: Well, say from the doorway to the back wall is probably about twenty feet and the hole was probably about from the back wall to the hole [sic] is probably about fifteen feet so it took up most of the area.

"Q: So, it was twenty feet from the door to the back wall. How about left to right if you are standing with your back to the door, left to right, how big was the room, not the hole?

"A: The room? Maybe about forty feet. . . .

"Q: If you were standing with your back towards the double doors [entering the reception area], and you are standing in the middle of those double doors, was the hole directly in front of you . . . ?

"A: It was right in front.

"Q: How far away from the door[s] was the edge of the hole?

"A: Once I swung the door open, it was two steps and I was in it."

Prior to plaintiff's accident, Consolidated had created three "trenches" in the floor of the reception area. These trenches were dug to allow Consolidated to place light fixtures in the

---

1. The contract between Cauldwell and Consolidated requires Consolidated to indemnify Cauldwell for any claims "arising directly or indirectly" out of Consolidated's acts or omissions.

floor. According to a project manager for Cauldwell and a fore-man for Consolidated, one crescent-shaped trench, situated approximately 10 to 15 feet from the double doors, was between 15 and 25 feet long, approximately 12 inches wide and between 7 and 10 inches deep. Each of the two other trenches, which flanked the crescent-shaped trench, were rectangular-shaped, and approximately six inches wide and five inches deep. These trenches were between 15 to 20 feet from the double doors. Consolidated did not dig any other trenches in the reception area or perform any other excavation work in that area.

Someone else, however, did perform excavation work in the reception area around the time of plaintiff's accident. During his deposition, the following exchange occurred between the foreman for Consolidated and counsel for Cauldwell:

"Q: And when you say that someone else chopped up the floor, are you talking about the rest of the floor in the reception area?

"A: The entire floor of the reception area, to my recollection, was chopped down four to five inches so when they laid the new stone in, it would be flush with the existing cement . . . .

"Q: So, the chopping was just to lower the floor so they can put the new floor—

"A: Basically.

"Q: So, it didn't have to do [with] the trench?

"A: Right. Time frame. It was basically at the same time. . . .

"Q: Do you have a specific recollection of the trench[es] being covered in the reception area at any point on the job site?

"[Discussion between attorneys]

"A: I don't recall the trench[es] in the reception area because I do recall the floor being chopped up. I believe it was at the same exact time. Meaning, the entire floor for the marble to be laid down. So, quite honestly, all of that happened at the— towards the end of the job at the same exact time . . . .

"Q: Do you know who was chopping the floor for the marble to be installed?

"A: I don't recall if it was the laborers [employed by Cauldwell] or the marble installers.

"Q: Is that a specific recollection that this was going on at the same time?

"A: Oh, absolutely. Made my job a whole lot harder [sic] piping when I was walking on everybody else's debris. . . .

"Q: Would covering the trenches have interfered with the chopping of the floor in preparation for the marble?

"A: The trenches were going in the same floor that the marble was going down so the whole place looked like the moon surface. . . .

"Q: Do you know if the interior of the trenches after they were cut were chopped out before the floor was chopped down four inches in preparation of [sic] the marble?

"A: I don't recall. I know we were laying our pipes in our trench[es] with the floor being totally ripped up."

This testimony was partially corroborated by the project manager for Cauldwell, who testified that a "stone contractor" performed work on the floor of the reception area, i.e., laid the subflooring in the area.

In light of this evidence, I cannot agree with the majority that a triable issue of fact exists regarding whether the "one big hole" into which plaintiff tripped and fell was created by Consolidated. It is undisputed both that Consolidated created three trenches in the reception area and that those trenches existed at the time plaintiff's accident occurred.[2] These trenches, however, were only 6 to 12 inches wide and were discrete excavations in the reception room floor. No one, let alone an employee of a sheet metal subcontractor, like plaintiff, would use the term "one big hole" to describe such trenches. No one, let alone an employee of a sheet metal subcontractor, who fell into a 12-inch-wide trench would say that he fell into a "hole" that was 20 feet wide. The "one big hole" described by plaintiff encompassed practically the entire floor and can only be the moon-like surface described by Consolidated's foreman that was created by another contractor or subcontractor. Moreover, plaintiff fell into the "one big hole" after taking just two steps from the double doors. The long, crescent-shaped trench, however, was 10 to 15 feet from the double doors. In short, the record does not support a reasonable inference that Consolidated created the condition that caused plaintiff's accident, and Supreme Court properly granted Consolidated's motion for summary judgment dismissing Cauldwell's third-party complaint as against it.

Supreme Court providently exercised its discretion in denying Cauldwell's motion for leave to renew its motion for summary judgment. The court properly concluded that Cauldwell failed to proffer a reasonable justification for its failure to present the af-

2. Although the majority notes plaintiff's testimony that there was an electrician working in the area at the time plaintiff fell, that circumstance is wholly irrelevant with respect to the issue of whether plaintiff fell into a "trench" or "one big hole."

fidavit of a former employee on its motion for summary judgment (*see* CPLR 2221 [e] [3]), and aptly characterized the affidavit as conclusory and insufficient to warrant granting leave to renew.

Accordingly, I would affirm both orders.